CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 29 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Respondent, | ) | Case No. 7:06-cr-00009-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CHAD ALLEN REEVES, | ) | |
| Defendant-Petitioner. | ) | By: James C. Turk |
| | ) | Senior United States District Judge |

Defendant Chad Allen Reeves,[1] a federal inmate proceeding *pro se*, filed under seal a "Motion to Enforce Agreement Regarding Withdrawal of Habeas Petition and Compel United States to File Motion for Reduction of Sentence Pursuant to F. R. Crim. P. 35(b)" (ECF No. 107). The United States filed a response on January 27, 2012, to which Reeves replied. Upon consideration of the briefs, the Court ordered Reeves to submit affidavits of witnesses who he would call at any evidentiary hearing on the matter. He submitted the affidavits of Bill Kirby, Tamara Kirby, Magan Kirby, and Fay Spence. While his "Motion to Enforce Agreement" was still pending, Reeves filed a "Rule 60(b)(6) Motion to Vacate Judgment of Petitioner's 41(a)(2) Voluntary Dismissal of Petitioner's 2255 Motion and His 2255 Evidentiary Hearing Under Rule 60(b)(6) 'Extraordinary Circumstances'" (ECF No. 125) as well as a Motion to Provide Transcripts at Government Expense (ECF No. 120). For the reasons set forth below, all of these motions are **DENIED**.

---

[1] While two of the motions before the Court have been filed in Reeves's capacity as a criminal defendant, one has been filed in his capacity as a Petitioner who has filed a Petition pursuant to 28 U.S.C. § 2255. For the sake of consistency, this Opinion will refer to Reeves as the Defendant.

1

I. **Factual and Procedural Background**

Chad Allen Reeves was indicted for conspiracy to possess methamphetamine with the intent to distribute in violation of 21 U.S.C. § 846. On August 2, 2006, he pled guilty to Count One of the Indictment pursuant to a plea agreement with the United States. In exchange for Reeves's guilty plea, the United States agreed that Reeves should only be held responsible for 1,171 grams of methamphetamine and to recommend to the Court that he be sentenced at the low end of the applicable guideline range. The Plea Agreement also contemplates the possibility of a motion for substantial assistance under Section 5K1.1 of the United States Sentencing Guidelines, but expressly indicates that no one had promised Reeves anything and explicitly states that the determination of whether any cooperation by the defendant constitutes "substantial assistance" is within the sole discretion of the U.S. Attorney's Office. Plea Agmt., ECF No. 44, ¶ 16. Additionally, in signing the agreement, Reeves agreed that "no one ha[d] promised [him] that . . . a substantial assistance motion [would] be made on [his] behalf." *Id.* Nonetheless, the plea agreement, somewhat inconsistently, also promised Reeves that if he "successfully complete[d his] efforts to offer full, voluntary, and truthful testimony, and that if [he] abide[d] by any reasonable requests of the case agents or the United States Attorney's Office, and [his] efforts result[ed] in the prosecution of another person or persons, then a motion [would] be made at his sentencing." *Id.*[2]

---

[2] By contrast, the current standard plea agreement utilized by the U.S. Attorney's Office for the Western District of Virginia is much more circumspect with respect to the government's obligations as to substantial assistance motions. The provision reads, in part:
> I understand even if I fully cooperate with law enforcement, the United States is under no obligation to make a motion for the reduction of my sentence. I understand if the United States makes a motion for a reduction in my sentence, the Court, after hearing the evidence, will determine how much of a departure, if any, I should be given. **I have not been promised anything.**

(emphasis in original).

On November 30, 2006, this Court sentenced Reeves to 188 months in custody, followed by a 60 month term of Supervised Release. On December 4, 2007, Reeves filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, which he amended on February 5, 2008. The Court has previously summarized Reeves's §2255 petition as follows:

> [T]he [C]ourt construes Reeves's § 2255 motion as stating nine distinct claims (although his original motion only formally labeled five). As an initial matter, (1) Reeves claims his guilty plea waivers (and therefore the plea agreement itself) are invalid due to his counsel's ineffectiveness. In large measure on this point, Reeves argues that counsel was ineffective because the written plea agreement did not reflect prior agreements between himself and the United States regarding substantial assistance-performed either by Reeves or by Reeves's father on his behalf. Reeves then asserts that the United States breached the plea by failing to file a U.S.S.G. §5K1 or Federal Rule of Criminal Procedure 35(b) motion in return for Reeves's substantial assistance. Relatedly, Reeves contends that the United States (3) acted in bad faith during the negotiation of the plea agreement and by not filing a substantial assistance motion. In addition, Reeves argues that counsel provided ineffective assistance by failing to: (4) investigate Reeves's leadership role in the charged drug conspiracy; (5) challenge venue; (6) discern the absence of a factual basis for conspiracy; (7) object to the leadership enhancement at Reeves's sentencing; and (8) object to the United States' purported breach/bad faith at sentencing. Lastly, Reeves contends that (9) counsel's ineffectiveness prevented Reeves from filing a timely notice of appeal.

2255 Mem. Op., Nov. 12, 2008, ECF No.98, at 2–3 (footnotes omitted). The government moved to dismiss the petition. Upon a review of the record, the Court set the matter for an evidentiary hearing on February 3, 2009 and appointed Fay Spence of the Federal Public Defender's office to represent Reeves. On January 28, 2009, Spence and counsel for the government reached a deal whereby Reeves agreed to drop his §2255 petition in exchange for the government filing a Rule 35 motion to reduce sentence.[3] Spence Aff. ¶ 3. Unable to reach agreement as to the

---

[3] A "Rule 35 motion" refers to a motion the government may file under Rule 35(b) of the Federal Rules of Criminal Procedure. In cases like this one, where the government files a Rule 35 motion more than one year after sentencing, the Court may reduce a previously-imposed sentence where the defendant provides substantial assistance to the government in investigating or prosecuting another person and that assistance involved: (1) information not known to the defendant until one year or more after sentencing; (2) previously-provided information that did not become useful to the government until more than one year after sentencing; or (3) information the usefulness of which could

amount of reduction that the government would recommend, the parties agreed that the government would simply file a motion and leave it to the Court to determine the extent of the reduction. *Id.* On January 29, 2009, the government filed its Rule 35 Motion. *See* ECF No. 98. Two days later, Reeves, by counsel, moved to voluntarily dismiss his §2255 petition. ECF No. 99. In light of Reeves's desire to withdraw his §2255 motion, the hearing, previously set to inquire into the facts surrounding Reeves's motion for *habeas* relief, was converted into a hearing on the government's Rule 35 Motion. After hearing testimony and other evidence, the Court granted the motion, amended its previous judgment and reduced Reeves's term of incarceration to 120 months in custody. *See* Am. Judgment, Feb. 12, 2009, ECF No. 104.

At some point, Reeves was visited at his place of incarceration by IRS Agent Rita White and a DEA Agent. They wanted to debrief him in the prison visiting room. Reeves contacted his counsel, Spence, to advise her that government agents were attempting to interview him. Def.'s Mot. to Enforce Agmt., ECF No. 107 at 3; Spence Aff. ¶ 9.[4] The agents then conducted an interview. According to Reeves, he met with Agent White, DEA Agent Dave Height, and officers from the Patrick County Sherriff's Department about his dealings with Logan Colifield and Lamounet Sawyers, whom he knows as "Cornbread." Mot. to Enforce Agmt. at 3. He claims that he "successfully assisted the government agents with the information they needed" and even sent the agents a follow-up letter after he had reviewed his notes. *Id.* At some point, Spence, at Reeves's request, contacted Agent White to inquire as to the quality of Reeves's

---

not have reasonably been anticipated by the defendant until more than one year after sentencing. Fed. R. Civ. P. 35(b)(2).

[4] It is unclear when Reeves made the initial call to Spence; Reeves seems to indicate that it happened after White and another officer arrived at the prison facility, while Spence indicates that an IRS investigator contacted her before travelling to Reeves' place of incarceration. Resolving this discrepancy is unnecessary to the resolution of the matters before the Court.

4

information. White told Spence that Reeves provided some corroboration, but no new information. Spence Aff. ¶ 12. In September 2010, Spence then spoke with the Assistant United States Attorney, who indicated that the Government did not intend to file a second Rule 35 motion at that time. *Id.*

The Government, unsurprisingly, tells a different story. It admits that law enforcement agents went to go see Reeves, Gov't's Resp. in Opp. ¶ 4, Jan. 27, 2012, ECF No. 110, but that is where the agreement ends. According to the Government, agents asked Reeves about Rayshawn Lewmar Sawyers, not "Lamounet Sawyers." and concluded that Reeves had never seen or met Sawyers. *Id.* ¶5. As to Logan Collifield, the Government claims that it never discussed the Collifield matter with Reeves. *Id.* ¶ 6. Moreover, the Government argues, it would have been nonsensical for it to do so because Collifield was in fact convicted before Reeves and Reeves only first met Collifield upon his incarceration at Federal Correctional Institution Beckley. *Id.* ¶ 6. Moreover, the Government asserts that Collifield was prosecuted in another judicial district and never prosecuted by the United States Attorney for the Western District of Virginia. *Id.* This last contention is borne out by court records.

Nearly three years after the Amended Judgment, Reeves filed a "Motion to Enforce Agreement" (ECF No. 107). He alleges that as part of his deal with the United States, the United States promised that if Reeves was further able to assist the government, it would file another Rule 35 motion at the appropriate time. Reeves contends that by providing information to the IRS, DEA, and the Patrick County Sherriff's Department, he provided assistance leading to the conviction of Lamounet Sawyers and Logan Colifield, for which he was entitled to a Rule 35 motion under his agreement with the United States. Upon an initial review of the motion, the Court ordered the government to file a response. It did so, and Reeves filed a reply. *See* ECF

5

Case 7:06-cr-00009-JCT   Document 126   Filed 06/29/12   Page 5 of 20   Pageid#: 647

Nos. 108, 110, 115. The Court then invited Reeves to submit affidavits from those witnesses he would seek to call at any evidentiary hearing on the matter. Reeves submitted the affidavits of Bill Kirby, Tamara Kirby, Magan Kirby, and Fay Spence. *See* ECF Nos. 113–14. A liberal construction of Reeves's motion and reply brief, *see* Haines v. Kenner, 404 U.S. 519 (1972), reveals claims that the Government's refusal to file Rule 35 motion is (1) a violation of his agreement with the United States; (2) in bad faith and not rationally related to a legitimate government interest; and (3) based on an unconstitutional motive, namely, to deny him access to the courts.

While his "Motion to Enforce Agreement" was under advisement, Reeves filed what the Court construes as a Motion to Provide Transcripts at Government Expense (ECF No. 120), and a Rule 60(b)(6) Motion asking the Court to vacate its prior dismissal of his §2255 Petition (ECF No. 125). The Court will address each of these motions in turn.

## II.     Motion to Enforce Agreement

According to Reeves, the February 2009 agreement to drop his §2255 Motion consisted of four parts: (1) Reeves agreed to voluntarily dismiss his petition; (2) the Government agreed to file a Rule 35 motion; (3) the Government would continue to seek and receive information from Reeves regarding other investigations and prosecutions; and (4) if and when the Government were to use Reeves again, it agreed to file a second Rule 35 motion. Mot. to Enforce Agmt. 5. Reeves claims that he and the government complied with all of their respective obligations except for the last one. That is, the Government failed to move for a second Rule 35 motion even after Reeves gave it information relating to another criminal investigation. Thus, he seeks to have the Court compel the United States to file a second Rule 35 motion in his case.

6

Reeves raises some substantial arguments, which are especially impressive in light of his status as an incarcerated litigant proceeding *pro se*. Ultimately, however, even viewing the facts in the light most favorable to Reeves, the Court cannot grant him relief. Moreover, because Reeves has not made a substantial showing that the Government harbored improper or unconstitutional motives in declining to file a second Rule 35 motion, the Court will also decline to grant an evidentiary hearing in this matter.

### A. Procedural Posture

As an initial matter, the Court will address the proper procedural posture for Reeves's motion. Some courts have construed *pro se* motions to compel as ones pursuant to 28 U.S.C. § 2255. If a court wishes to do so, it is required to give a prisoner notice of its intention to convert the motion and an opportunity to withdraw his motion. Castro v. United States, 540 U.S. 373, 383 (2003). Upon reviewing Reeves's motion and the record in this matter, the Court sees no reason to construe it as a §2255 petition. Liberally construed, Reeves's motion is best understood as a Motion to Compel the United States to file a Rule 35 Motion, and the Court will analyze it under that framework.

### B. Rule 35

Before a criminal defendant is sentenced, the government may file what is commonly-termed a "5K Motion" pursuant to Section 5K1.1 of the United States Sentencing Guidelines asking the Court for a downward departure from the advisory guideline range based on the defendant's substantial assistance to law enforcement before sentencing. Where, as here, the crime of conviction carries a mandatory minimum sentence, a 5K Motion authorizes the sentencing judge to disregard the mandatory minimum and sentence the defendant to a shorter

7

term of incarceration than the mandatory minimum. *See* 18 U.S.C. § 3553(e). A 5K Motion may only be considered at the time of sentencing. The Court may also reduce a defendant's sentence upon the government's motion if the defendant provides substantial assistance in investigating or prosecuting another person *after* sentencing. Fed. R. Crim. P. 35. Although the two types of motions are similar, they are not the same and must be treated independently—for example, it is unconstitutional for the government to premise its decision not to file a 5K Motion at the time of sentencing on the sole basis that it plans to file a Rule 35 motion after sentencing. United States v. Martin, 25 F.3d 211, 216 (4th Cir. 1994) (citing United States v. Drown, 942 F.2d 55 (1st Cir. 1991)). *But see* United States v. Speed, 53 F.3d 643, 645–47 (4th Cir. 1995) (denial of sentencing continuance is not improper where defendant claimed that additional time before sentencing could gain him benefit of 5K Motion and record reflects that government would base any future Rule 35 motion solely on postsentencing cooperation).

Under ordinary circumstances, the decision as to whether or not to file a substantial assistance motion lies entirely within the government's discretion. *See* United States v. Butler, 272 F.3d 683, 686 (4th Cir. 2001). But that discretion is not completely unlimited. Where the government's refusal to file a Rule 35 Motion (1) is in breach of a plea agreement; (2) not rationally related to a legitimate government interest; or (3) based on an unconstitutional motive, that refusal is subject to judicial review.

### C. Evidentiary Hearing Standard

But "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." Wade, 504 U.S. at 186. Rather, "judicial review is

8

appropriate only when there is an allegation *and* a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation." United States v. Dorsey, 554 F.3d 958, 961 (11th Cir. 2009) (internal citation and quotation omitted). In other words, Reeves is not entitled "to discovery or an evidentiary hearing unless he makes a substantial threshold showing." Wade, 504 U.S. at 186 (internal quotation marks omitted).

The Court's own research has not revealed any direct authority on what constitutes a "substantial threshold showing" in the context of a motion to compel a Rule 35 Motion. However, the Supreme Court and our Court of Appeals have both delineated the "substantial showing" phrase in other contexts. For example, a judge or Justice may not issue a certificate of appealabiltiy from a final order in a habeas corpus proceeding unless the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In Slack v. McDaniel, 529 U.S. 473 (2000), the Supreme Court contemplated the substantial showing standard as including a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve the encouragement to proceed further." *Id.* at 483–84 (internal quotation marks omitted). *See also* Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). Of course, an appeal of whether to grant the Great Writ necessarily involves legal conclusions upon which jurists may disagree. Here, the question for the Court is whether Reeves has made a substantial evidentiary showing that the government's declination to file a substantial assistance motion was based on a constitutionally impermissible motive.

Courts have also interpreted "substantial showing" language when evaluating the validity of warrants. In United States v. Franks, 438 U.S. 154 (1978), the Supreme Court declared that a

9

criminal defendant is entitled to a hearing on the legality of an otherwise facially-valid search warrant where he makes a "substantial preliminary showing" that the affidavit in support of the search warrant was based on a knowingly or recklessly false statement that is material to the determination of probable cause. *See id.* at 155–56. The substantial showing in this context "must be more than conclusory." *Id.* at 171. Where a defendant seeks to prove that a warrant was based on omissions rather than affirmative falsehoods, the bar for getting an evidentiary hearing is even higher—the defendant must (1) identify the factual omissions, (2) show that they were designed to mislead or made in reckless disregard of whether they would mislead, and (3) that the omissions were material. United States v. Clenney, 631 F.3d 658, 664 (4th Cir. 2011) (citing United States v. Tate, 524 F.3d 449, 454–55 (4th Cir. 2008)). Mindful of these principles, the Court now turns to each of Reeves's claims to determine whether he has met the "substantial threshold showing" necessary for the grant of an evidentiary hearing in this context.

### D. Government's Breach of Agreement to Drop the §2255 Petition

Reeves argues that the United States has breached its obligations to him under the agreement to drop his §2255 Petition, and asks this Court to force the Government to live up to its end of the bargain by filing a Rule 35 Motion. This situation may be likened to those in which defendants claim that the United States has breached its obligations under a traditional plea agreement. The only difference is that here, the government's promises were made in order to induce Reeves to withdraw his §2255 petition, rather than to plead guilty. "Drawing largely on the law of contracts in the commercial context, the courts have developed a fairly large body of law to guide the judicial interpretation of plea agreements." United States v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991). The party alleging the breach, in this case, Reeves, must demonstrate by a preponderance of the evidence that he has fulfilled his obligations under the

agreement and that the government has not fulfilled its obligations. *See id.* The threshold question, of course, is the scope of the agreement.

The Court has given Reeves an opportunity to make the "substantial showing" that would entitle him to an evidentiary hearing. Yet, the affidavits he produced in response to the Court's order have spectacularly failed to do so. None of the Kirby affidavits are based on personal knowledge of the agreement between Reeves and the United States. Even taking them as true, they are simply generalizations based on the affiants' perceptions of the court proceedings and the representations of counsel. For example, Bill Kirby, whose affidavit is the most substantial of the three, states that "At the [February 3, 2009] hearing, it was [his] understanding that Chad Reeves *could* receive another sentence reduction if he did anything else to help the government." Kirby Aff., Mar. 7, 2012, ECF No. 113 (emphasis added). He also states that he was told by Greg Phillips (Reeves's trial attorney who he later accused of being constitutionally ineffective), that the government had identified certain prosecution targets who they planned to use Reeves with, and that if Reeves provided this information, "another motion would be filed to reduce Chad Reeves['s] sentence." *Id.* Unfortunately for Reeves, none of the Kirby affidavits indicate that any of the affiants have personal knowledge of the agreement between Reeves and the government. The closest they come is Bill Kirby's assertion of the explicit terms of the deal—but this again is not based on his personal knowledge, but what was told to him by Attorney Phillips. *Id.* ("I was told by Greg Phillips that the government had other people that they needed Chad Reeves['s] help with and if this took place another motion would be filed to reduce Chad Reeves['s] sentence."). This is hearsay, and would be inadmissible at any evidentiary hearing. *See* Fed. R. Evid. 802 (hearsay is generally inadmissible); *id.* 1101 (applicability of rules of evidence). The last affidavit, by Attorney Fay Spence, who was appointed to represent Reeves

11

during the course of his §2255 proceedings, does appear to be based on her personal knowledge of the agreement between Reeves and the United States. But Spence's affidavit lends no support to Reeves's theory of the proceedings. In fact, it confirms exactly the opposite:

> After discussions with Mr. Reeves, his former counsel, and other relevant witnesses, counsel began discussing possible resolution of the Petition with [the Assistant U.S. Attorney]. On January 26, 2009, [the Assistant U.S. Attorney] offered a Rule 35 Motion in exchange for Reeves dropping his 2255 petition. Thereafter, negotiations revolved around how much of a reduction Mr. Reeves should get . . . . Unable to agree upon an amount of reduction, the parties agreed that the Government would file a Rule 35 motion and that the parties would present evidence upon which the Court would determine the amount of Reeves' reduction. *The consideration for such Motion was Reeves' agreement to drop his 2255 Petition.*

Spence Aff. ¶ 3, Mar. 8, 2012, ECF No. 114 (emphasis added). There is nothing in the record to indicate that the United States breached its part of the deal.

In his reply brief, Reeves places some emphasis on the Government's representations at the February 3, 2009 hearing. *See* Def.'s Answer to Resp. of the Gov't 3, Feb. 7, 2012, ECF No. 111 ("During the hearing, the Court noticed that IF Reeves assisted the United States again, the United State's [sic] Attorney would be compelled to file another Motion under Rule 35(b)."). But the Court's review of the hearing transcript shows a different story. The Rule 35 hearing revealed that the government was not happy with Reeves, did not trust him as a witness, and was making the motion begrudgingly because his original plea agreement was vague as to the Government's obligations. Harmon testified that Reeves's father, Greg Reeves, had provided information that furthered the case against Greg Alderman. Rule 35 Hearing Transcript ("Tr.") 21.[5] But according to Harmon, Reeves's cooperation, by itself, was of little use to the

---

[5] In the interests of justice and judicial economy, the Court has obtained an unofficial transcript of the February 3, 2009 proceedings from the court reporter. All citations are to this unofficial transcript and the page and line numbers are thus subject to change in the official record copy.

12

government, and to the extent any of it was useful, it was simply corroborative. *Id.* at 23. When asked how comfortable he would feel using Reeves as a witness in a subsequent criminal prosecution, Harmon responded:

> At that point I was very hesitant and I would be at that--still very hesitant. I'm not saying I wouldn't put Mr. Reeves on the stand, but it would take great care and discretion with his history of manipulating and evading, actually. There's no other way to explain it. I'm not saying that Mr. Reeves doesn't have great promise for us in the future . . . I think that, you know, it would be a matter of putting all this out for the jury to decide on who they would believe and who they wouldn't . . . . I would use great care in putting Mr. Reeves on the stand.

*Id.* at 14. Harmon also testified that he had information that Reeves suborned perjury. *Id.* at 15. The sum and substance of Harmon's testimony was that while he would not commit to never utilizing Reeves as a witness or informant, Reeves was an unreliable witness who gave him great pause.

Spence did swear that the government indicated in open court that "another Rule 35 would be forthcoming if Reeves had the opportunity and did, in fact, provide substantial assistance in . . . other matters in the future." Spence Aff. ¶ 8. But the Court's review of the hearing transcript does not lend any support to this last assertion. And even if it did, there is nothing to indicate that a gratuitous comment by Government counsel at a hearing was incorporated into the agreement.[6] Reeves has not made a substantial showing that his agreement with the United States obliged the Government to file a subsequent Rule 35 Motion.

---

[6] Moreover, even if the Court were to assume that Spence's recollection of the facts was accurate and that the Government's comments at the hearing were part of its agreement with Reeves, he has not shown that any assistance he provided after the February 2009 hearing was "in fact, substantial."

13

Accordingly, he has not made a preliminary showing that the Government breached that agreement.[7]

### E. Bad Faith/Rational Relationship to Legitimate Government Interest

Next, Reeves argues that the government acted in bad faith and its decision not to file a Rule 35 motion lacked a rational relationship to a legitimate government interest. Reeves may be entitled to relief if the United States' decision not to file a second Rule 35 Motion was "not rationally related to any legitimate Government end." Wade, 504 U.S. at 186. Having reviewed the record, the Court finds no evidence that the government's refusal to file a second Rule 35 motion was in bad faith or lacked a rational relationship to a legitimate government interest. Even if Reeves *had* provided the information he claims led to the conviction of Sawyers and Collifield, "[t]he Government's decision not to [make a Rule 35 Motion] may have been based not on a failure to acknowledge or appreciate [Reeves]'s help, but simply on its rational assessment of the cost and benefit that would flow from moving." *Id.* at 187. Consequently, Reeves has failed to make the preliminary showing as to this claim as well.

---

[7] Our Court of Appeals considered a similar situation in United States v. Matthews, 404 F.App'x 749 (4th Cir. 2010) (per curiam) (unpublished). Matthews pled guilty to conspiracy to distribute cocaine and was sentenced to a term of 480 months imprisonment. At some later date, the Government filed a Rule 35 motion, which the district court granted, reducing the sentence to 300 months. Matthews then asked the district court to compel the government to make additional Rule 35 motions to reflect the scope and nature of his additional cooperation. The Fourth Circuit concluded that because the government had no enforceable obligation to file a Rule 35 motion in the first place, it could not be compelled to do so. *Id.* at 749–50. *Accord* Gregory v. United States, Nos. 3:08CV482-1-W, 3:03CR162, 2009 WL 1021342 (W.D.N.C. Apr. 15, 2009).

### F. Unconstitutional Motive—Denial of Access to the Courts

Reeves also claims that the Government refused to file a second Rule 35 motion in an effort to deny him access to the courts. Essentially, Reeves reasons, the Government made a false promise to him (that it would file a second Rule 35 motion at a later date) in order to induce him to dismiss his §2255 petition, thereby denying him access to the Courts. This Court has the authority to review the government's refusal to file a motion for substantial assistance if the refusal was based on an unconstitutional motive. Wade, 504 U.S. at 185. The unconstitutional motive contemplated by Wade was a decision not to file a substantial assistance motion based on a particular characteristic of a defendant, such as race or religion. *Id.* at 186. At least one federal Court of Appeals, however, has contemplated that if the government's motive in refusing to file a Rule 35 motion is to deny a criminal defendant access to the courts, that decision is subject to judicial review. *See* United States v. Wilson, 390 F.3d 1003, 1009 (7th Cir. 2004). Along these lines, Reeves argues that the Government hoodwinked him. That is, it falsely promised him that it would file two substantial assistance motions in order to get him to drop his §2255 Petition. In so doing, and then deciding not to file the second Rule 35 Motion, Reeves reasons, the Government denied him access to the Courts because it effectively took away his right to file a §2255 Petition. But again, even if the Court were to give credence to everything in the affidavits Reeves submitted, there is nothing to indicate that the United States' refusal to file a second Rule 35 Motion was based on its desire to deny Reeves access to the courts. Reeves cannot prevail based on implication and conspiracy theory alone.

15

Case 7:06-cr-00009-JCT   Document 126   Filed 06/29/12   Page 15 of 20   Pageid#: 657

### III. Transcripts of the February 3, 2009 Hearing

In Hardy v. United States, 375 U.S. 277 (1964), the Supreme Court held that where the Court of Appeals appoints counsel for an indigent defendant, counsel is entitled to a full transcript of the proceedings below at government expense. *Id.* at 282. "[T]here is no doubt that a criminal defendant has a right to a meaningful appeal based on a complete transcript." United States v. Brown, 202 F.3d 691, 696 (4th Cir. 2000) (quoting United States v. Huggins, 191 F.3d 532, 536 (4th Cir. 1999)) (internal quotation marks omitted). To the extent that portions of that transcript support the Court's decision, they are cited to here. Our Court of Appeals has time and again affirmed the principle that an indigent criminal defendant is not entitled to post-conviction transcripts at government expense absent a showing of a particularized need for them. Jones v. Superintendent, Va. State Prison, 460 F.2d 150, 153 (4th Cir. 1972); United States v. Glass, 217 F.2d 200, 202 (4th Cir. 1963); United States v. Shoaf, 341 F.2d 832, 835–36 (4th Cir. 1964). *See also* United States v. MacCollom, 426 U.S. 317, 328 (1976) (No absolute right of § 2255 petitioner to obtain transcript at government expense); United States v. Parker, 273 F.App'x 243, 244 (4th Cir. 2008) (per curiam) (unpublished) (no showing of particularized need where criminal defendant requested sentencing transcript in order to verify his cooperation with the government in a previous matter and where it was not relevant to the matter at hand). As noted above, the Court has obtained and reviewed an unofficial draft copy of the transcript of the Rule 35 hearing in order to resolve the issues before it. Reeves has not made a showing of a particularized need for the hearing transcript, and therefore his motion for transcripts at government expense is and must be **DENIED**.

16

Case 7:06-cr-00009-JCT   Document 126   Filed 06/29/12   Page 16 of 20   Pageid#: 658

## IV. Rule 60(b)(6) Motion

While his Motion to Compel was pending before the Court, Reeves filed a Motion for Relief from a Judgment or Order pursuant to Rule 60(b)(6). Reduced to its essentials, the motion argues that the Court should reinstate Reeves's original § 2255 petition claiming ineffective assistance of counsel and continue with the previously-scheduled evidentiary hearing because the Assistant U.S. Attorney conspired with his defense attorneys to unjustly coerce him into withdrawing his petition.

As an initial matter, the Court must determine whether it is required to construe the motion as a successive §2255 petition. It is not. Reeves's initial petition was voluntarily dismissed before the Court had the opportunity to rule on the merits. Thus, a second motion would not be a " 'second or successive' motion within the meaning of the eighth paragraph of § 2255." United States v. Sosa, 364 F.3d 507, 510 n.2 (4th Cir. 2004). In this case, Reeves's motion, whatever its merits, is properly viewed as an attack on the procedural disposition of his previous §2255 motion rather than an attempt to relitigate issues upon which the Court has already made a decision. Accordingly, it will not treat the motion as so, and turns to the substance of the motion.[8]

The judiciary has long had a strong interest in the finality of judgments. Revising a judgment under Rule 60 is ordinarily the exception and not the rule. "A party moving for relief under Rule 60(b) 'must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances . . . . [o]nce a movant makes this

---

[8] Indeed, Reeves explicitly implores the Court not to construe his motion as anything other than a Rule 60(b) motion. Def.'s Mot. at 1–2.

threshold showing, she must then satisfy one of six subparts of Rule 60(b)." Murchison v. Astrue, Nos. 10-1200, 11-1462, 2012 WL 475581 (4th Cir. Feb. 15, 2012) (quoting Weiner v. Carbo, 731 F.2d 204, 206–07 (4th Cir. 1984)). Rule 60(b)(6) is a "catch-all provision," Aikens v. Ingram, 652 F.2d 496, 500 (4th Cir. 2011) (en banc), that is rooted in the Court's historical equitable power: it "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. United States, 335 U.S. 601, 615 (1949). Perhaps in recognition of the extraordinary discretion the provision provides to trial courts, our Court of Appeals has declared that such a motion "may not be granted absent extraordinary circumstances." Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." Aikens, 652 F.2d at 501 (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 873 (1988) (Rehnquist, C.J., dissenting)).

According to Reeves, the Court should turn back the clock and reverse the voluntary dismissal of his § 2255 petition because his dismissal was not voluntary at all. According to Reeves, "It's very obvious there was nothing voluntary about [the dismissal]. It was induced by [the Assistant United States Attorney] and [Reeves's trial counsel] only to protect themselves from another wrong doing [sic] they performed during the Rule 11 hearing." Def.'s Rule 60(b)(6) Mot. at 10–11, May 2, 2012, ECF No. 125. These things might be obvious to Reeves, but they are not obvious to the Court. Reeves's motion consists of page after page of fanciful allegation—that the officers of the Court conspired to keep the truth from the Court and that they arranged to have Reeves sent away.

But that is all they are—unsupported allegations. As noted above, Reeves offers no direct evidence that bears upon the government's motive for withholding a second Rule 35

18

motion before the advent of his §2255 petition. Moreover, it is undisputed that Reeves withdrew his §2255 petition in exchange for the government's making a Rule 35 motion.[9] Reeves appears to think that because "the government held a 35(b) motion over Petitioner's head in order to drop his §2255," Def.'s Rule 60(b)(6) Mot. at 14, he should be granted relief. This conclusion is in error. In the Court's view, Reeves received exactly what he bargained for.

Just because the Court wasn't advised of the details of the parties' agreement does not make the agreement itself invalid. At the collateral stage, Reeves's case was a civil matter. Parties settle civil cases all the time; the Court is hardly ever apprised of all the details. Moreover, in this case, while the government did not advise the Court on record as to the contours of the agreement to drop the §2255 motion, the Assistant U.S. Attorney did tell the Court that the government was making a Rule 35 motion because it had reviewed the Court's opinion and looked at the language of Reeves's original plea agreement, and decided that Reeves was entitled to a Rule 35 reduction. Tr. 4:17–22. The Rule 35 hearing occurred; the government moved for a substantial assistance motion and left the amount of sentence reduction up to the Court. *See* Tr. 80:21–23. Reeves, by counsel, voluntarily dismissed his § 2255 petition and submitted a motion to that effect which was granted by the Court. Now, he claims that dismissal was coerced.

Unfortunately for Mr. Reeves, there is no evidence to support his farfetched claims. The best the Court can discern, Reeves made a deal and he is now unhappy with the result. There is nothing to indicate that his attorney did not represent his interests. Moreover, his bare claims are insufficient to justify an evidentiary hearing on this issue. If the Court were to follow that course

---

[9] As outlined above, the extent of the government's promise is disputed.

19

of action, each and every criminal defendant who felt aggrieved by his conviction or sentence would be entitled to a hearing, and the administration of justice would come to a halt. Buyer's remorse is not a reason justifying relief, and it certainly does not fall within the ambit of the extraordinary circumstances envisioned by Rule 60(b)(6).

## V. Conclusion

For the foregoing reasons, all of Reeves's pending motions (ECF Nos. 107, 120, 125) are **DENIED.** An appropriate Order shall issue this day.

ENTER: This 29th day of June, 2012.

_____
Senior United States District Judge

20

Case 7:06-cr-00009-JCT   Document 126   Filed 06/29/12   Page 20 of 20   Pageid#: 662